## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINE F. B., | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | NO. 24-5210 |

### MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                    June 30, 2025

Christine F. B. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the

Social Security Administration Commissioner's ("the Commissioner") final decision, denying her

claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"),

under Titles II and XVI of the Social Security Act.  Plaintiff filed a brief supporting her request

for review, the Commissioner responded to it, and Plaintiff has replied.  For the reasons set forth

below, Plaintiff's Request for Review will be denied, and Judgment will be entered in Defendant's

favor and against Plaintiff.

## I.    PROCEDURAL HISTORY[2]

On July 26, 2021, Plaintiff applied for SSI and DIB, alleging that disability, began August

1, 2020, because of Post-Traumatic Stress Disorder ("PTSD"), substance use disorder, oxycodone

addiction, ophthalmic issues, depression, and diminished visual acuity.  R. at 240-78, 298.   The

---

[1]  Frank Bisignano became Commissioner of the Social Security Administration on May 7, 2025.  Pursuant to Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted as Defendant in this suit.  Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this suit.
[2]  This court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), Defendant's Response to Request for Review of Plaintiff ("Def.'s Resp."), Plaintiff's Reply Brief ("Pl.'s Reply"), and the administrative record ("R.").

Social Security Administration ("SSA") initially, and upon reconsideration, denied Plaintiff's claim; hence, she requested a hearing. *Id.* at 145-54, 161-68. On May 25, 2023, Plaintiff appeared for a telephonic hearing before Administrative Law Judge ("the ALJ") Philip Healy. *Id.* at 43. Plaintiff, represented by an attorney, and vocational expert Mary Beth Copar ("the VE") testified at the hearing. *Id.* On May 28, 2024, the ALJ, using the sequential evaluation process ("SEP") for disability,[3] issued an unfavorable decision. *Id.* at 27. The Appeals Council denied Plaintiff's request for review, on July 29, 2024, making the ALJ's findings the Commissioner's final determination. *Id.* at 1-8. Plaintiff sought judicial review from this court, on January 16, 2025. Both parties have consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

---

[3]  The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

> 2. If claimant is found not to have a severe impairment which significantly limits her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, s/he is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## II.    FACTUAL BACKGROUND

A.    Plaintiff's Personal History

Plaintiff, born on July 25, 1976, R. at 25, was 44 years old on the alleged onset disability date.  R. at 58.  She attended nursing school and has past relevant work experience in various roles, including nurse, nurse supervisor, licensed practical nurse, home healthcare nurse, and hospice worker.  *Id.* at 24, 48, 50, 52-53, 57.

B.    Plaintiff's Testimony

At the administrative hearing, Plaintiff testified about her mental and physical limitations. She stated that she stopped working in August of 2020 because of a corneal injury.  *Id.* at 59.

Plaintiff testified that as a consequence of her eye injury, she became unable to go out during the day because of the brightness of the sun; or at night because she could not see.  *Id.*  She had no peripheral vision on the right side or depth perception, which resulted in frequent falls and a further fear of going outside.  *Id.*  Plaintiff elaborated that, since she also has limited vision in her left eye, she requires a magnifying glass to read paperwork and cannot drive.  *Id.* at 61, 68. Plaintiff stated that she suffers from panic attacks, insomnia, and depression because of her lost independence.  *Id.* at 61.  She also experiences migraines because of her eye injury.  *Id.* at 63, 73.

Plaintiff's sister handles all the grocery shopping and laundry; Plaintiff's son assists with other household chores.  *Id.* at 70.  Plaintiff testified that her bouts of depression have negatively impacted her personal grooming habits.  *Id.* at 70-71.

 Plaintiff takes the following medications: Seroquel, Trazodone, and Prazosin.  *Id.* at 66. Also, she has struggled with Oxycodone addiction.  *Id.* at 60.

C.    Vocational Expert's Testimony

At the May 25, 2023 hearing, the VE testified that, based on Plaintiff's file, she classified

Plaintiff's past skilled[4] work as follows:  (1) nurse, a medium[5] position, performed at the heavy[6]

level; (2)  nurse supervisor, a light[7] position, performed at the heavy to very heavy[8] level; and (3)

home health nurse a medium position, performed at the heavy to very heavy level.  R. at 78-79.

The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education,

and work experience, capable of performing light work, and with the following limitations:

> [She] can never climb ladders, ropes or scaffolds, [she] could
> occasionally [climb] ramp[s] and stairs, [she] can balance, stoop,
> kneel, crouch and crawl.  No work with driving or with concentrated
> exposure to dangerous moving machinery, unprotected heights, and
> bright light defined as direct sunlight.  [She] can tolerate only
> occasional interaction with the public, coworkers, and supervisors.
> [She has] the ability to understand, remember and carry out simple
> routine tasks and make simple work-related decisions.  Also no
> work that requires peripheral vision in the right eye and no work that
> requires precise depth perception.

*Id.* at 79.  The VE responded that, although this hypothetical individual could not perform

Plaintiff's past relevant work, they could perform the unskilled[9] and light jobs of:  (1) sorter,

---

[4]  "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced.  Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work.  Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity."  20 C.F.R. §§ 404.1568(c), 416.968(c).

[5]  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. §§ 404.1567(c), 416.967(c).

[6]  "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work."  20 C.F.R. §§ 404.1567(d), 416.967(d).

[7]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

[8]  "Very heavy work involves lifting object weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds or more."  20 C.F.R. §§ 404.1567(e), 416.967(e).

[9]  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength.  For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines

300,000 positions nationally; (2) order caller, 25,000 positions nationally; and (3) photocopy operator, 40,000 positions nationally. *Id.* at 79-80.

The ALJ's second hypothetical included the previous restrictions and added a limitation to work that does not "involve[] an assembly line pace." *Id.* at 80. The VE answered that all the alternative jobs provided would remain at the exact numbers. *Id.*

Finally, the ALJ presented to the VE a third hypothetical that included all the previous restrictions, but with an additional restriction to "[j]obs without ordinary hazards in the workplace, defined as boxes on the floor and doors ajar." *Id.* The VE replied that such an individual, nevertheless, could perform each of the identified jobs. *Id.* at 80-81.

### III.    THE ALJ'S FINDINGS

In his decision, the ALJ issued the following findings:

1. [Plaintiff] last met the insured status requirements of the Social Security Act through December 31, 2024.

2. [Plaintiff] has not engaged in substantial gainful activity since August 1, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: right eye corneal ulceration, myopia, and central stromal corneal scar; anxiety with panic attacks; depressive disorder; PTSD; and substance use disorder (oxycodone addiction) (20 CFR 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform

_____

which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; frequently balance, stoop, kneel, crouch, and crawl; no work with driving, or with concentrated exposure to dangerous moving machinery, unprotected heights, and bright light defined as direct sunlight; can tolerate only occasional interaction with the public, co-workers, and supervisors; has the ability to understand, remember, and carry out simple, routine tasks, and make simple work related decisions; also, no work that requires peripheral vision in the right eye, and no work that requires precise depth perception; no work that involves an assembly line pace; and limited to jobs without ordinary hazards in the workplace defined as boxes on the floor and doors ajar.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. [Plaintiff] was born on July 25, 1976, and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from August 1, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. at 13-15, 17, 24-26.

## IV.   DISCUSSION

A.   <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if substantial evidence supports them.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance.  *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Overall, this test is deferential to the ALJ.  *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  The court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion.  *Id.*  Indeed, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Monsour Med. Ctr.*, 806 F.2d at 1190-91.  Nor is the court permitted to "impose [its] own factual determinations."  *Chandler*, 667 F.3d at 359; *see Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder.").  By contrast, the Commissioner's legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.    <u>Burden of Proof in Disability Proceedings</u>

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she cannot engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents a return to their past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that the impairment results in functional limitations to performing their past relevant work, then the burden of proof shifts to the Commissioner to prove that work exists in the national economy, which Plaintiff can perform given their age, education, work experience, and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.    <u>Review of the Administrative Law Judge's Decision</u>

Applying the sequential evaluation process, the ALJ determined that, while Plaintiff could not perform her past relevant work, she, nevertheless, could perform other work, because suitable jobs in the national economy exist in significant numbers.  R. at 25.    Appropriate light jobs

included those identified by the VE: (1) sorter, (2) order caller, and (3) photocopy operator. *Id.* at 79-80.

Plaintiff disputes the ALJ's decision and argues that he reversibly erred because: (1) he improperly evaluated the opinion of Dr. Lyons; (2) he improperly evaluated the opinion of Dr. Gibbings; (3) the hypothetical posed and the RFC were flawed because not all of Plaintiff's limitations were included. Pl.'s Br. at 5, 11, 13, 18-19. The Commissioner counters that the ALJ properly reached his non-disability decision. Def.'s Resp. at 6, 13, 15, 19. This court finds that the ALJ committed no errors, and substantial evidence supports his RFC assessment. Hence, Plaintiff's claims lack merit.

    1. <u>Dr. Lyons' Opinion</u>

Plaintiff argues that the ALJ's consideration of the opinion provided by Dr. Maryssa Lyons, MD, was flawed because he failed entirely to consider supportability, and erred in his consistency analysis because he did not consider the opinion's consistency along with that of Dr. Gibbings. Pl.'s Br. at 9, 11. This court finds that the ALJ sufficiently addressed the supportability and consistency factors.

Because Plaintiff filed his disability claim after March 27, 2017, the ALJ was required to apply new regulations when evaluating medical opinions. 20 C.F.R. §§ 404.1520c, 416.920c. Under new regulations, the ALJ need not defer to or give any specific evidentiary weight to medical opinions from treating sources. *Id.* at §§ 404.1520c(a), 416.920c(a). Rather, when an ALJ considers medical opinions in the record, new governing regulations indicate that supportability and consistency are the two most important factors.[10] *Id.* at §§ 404.1520c(b)(2),

---

[10] These regulations identify five factors for evaluating medical opinions that the ALJ should consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

416.920c(b)(2).  Indeed, those are the only two factors an ALJ must consider explicitly.  *Id.*
Supportability refers to the objective medical evidence and accompanying explanation that the
medical source provides to justify those medical opinions.  *Id.* at §§ 404.1520c(c)(1),
416.920c(c)(1).  Consistency refers to whether, and how consistent, the medical source's opinion
is with evidence from other medical and nonmedical sources in the record.  *Id.* at §§
404.1520c(c)(2), 416.920c(c)(2).  This articulation standard does not conflict with the enabling
statute.  *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

When assessing Dr. Lyons' opinion, the ALJ stated that he did not find the opinion
persuasive because it based the limitations on "claimant's subjective report."  R. at 24.  He later
concluded his analysis by stating that the "lack of supportability" rendered Dr. Lyons' opinion
unpersuasive.  *Id.*  In short, the ALJ assessed the extent to which the opinion was supported by
medical evidence and concluded that the support Dr. Lyons provided was insufficient.  While the
ALJ could have more clearly at the outset stated that he was assessing supportability, and then
proceeded with the appropriate analysis, this circuit has stated that failing to use "the magic words
'support' . . . for each doctor" does not render the analysis flawed.  *Zaborowski*, 115 F.4th at 639.
Therefore, this court will not remand on this basis.

As to consistency, this court finds that the ALJ's analysis adequately addressed the
opinion's consistency.  The ALJ was not required to specify whether Dr. Lyons' opinion was
consistent with that of Dr. Gibbings, as Plaintiff claims.  However, he was required to provide a
sufficient explanation of his consistency finding that permits this court to conduct a meaningful
review.  *See Fargnoli*, 247 F.3d at 42; *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120
(3d Cir. 2000).  He did so here, when he stated that Dr. Lyons' opinion was inconsistent with her
own treatment notes.  R. at 23.  Therefore, the court finds no error in the ALJ's consistency analysis

of Dr. Lyons' opinion.

2.  Dr. Gibbings' Opinion

Plaintiff takes issue with the ALJ's consideration of the opinion evidence provided by Dr. Elisabeth Gibbings, PsyD, and the ALJ's supportability and consistency analysis.  Pl.'s Br. at 13. This court finds that by focusing on the supportability and consistency of Dr. Gibbings' opinion, when finding his opinion unpersuasive, the ALJ fully complied with the regulations concerning how to evaluate the persuasiveness of medical opinions.  *See* 20 C.F.R. §§ 404.1520c(a), (c)(1)-(2);416.920c(a), (c)(1)-(2).

First, the ALJ stated that he did not find that Dr. Gibbings' findings of mild to moderate limitations as to simple instructions, moderate to marked limitations as to complex instructions, marked limitations as to interacting with all other people, and marked limitations as to adapting, to be supported.  R. at 23.  Second, the ALJ found that Dr. Gibbings' opinion was "not consistent with medical records in evidence documenting that [Plaintiff] has generally normal mental status examinations despite some mild limitations in attention and concentration, . . . ." *Id.*  The ALJ, in explicitly considering the required factors of supportability and consistency, found the opinion to be unpersuasive.  He also cited substantial evidence, which is simply more than a mere scintilla.[11] *Biestek*, 587 U.S. at 103.  Hence, there is no basis to find that he committed legal error in this instance.

3.  Hypothetical Question and RFC

Plaintiff states that the ALJ's RFC assessment was defective, as was the initial hypothetical question posed to the VE, hence, substantial evidence does not support the ALJ's non-disability

---

[11]  Plaintiff cites record evidence that could support an opposite conclusion from the one reached by the ALJ.  Pl.'s Br. at 15-17.  However, the existence of contrary evidence does not signify that the ALJ failed to identify substantial evidence to support his conclusion.  Again, that is all that is required.  *Biestek*, 587 U.S. at 103.

finding. This court finds no flaw in the ALJ's hypothetical.

Plaintiff first argues that the ALJ's hypothetical was flawed because it failed to include a sufficient limitation on her visual acuity (*i.e.*, Plaintiff's clarity or sharpness of vision, particularly on details at a distance) in her right eye due to a corneal ulcer. Pl.'s Br. at 19. In the hypothetical to the VE, the ALJ limited Plaintiff to work that did not require peripheral vision in the right eye or work that required precise depth perception. R. at 79. In his opinion, the ALJ further explained his RFC assessment as to Plaintiff's vision as follows:

> To consider the claimant's vision limitation I remove climbing of ladders, ropes, and scaffolds. I also limited the claimant to no work with driving and no work with concentrated exposure to bright light defined as direct sunlight. I further consider the limited vision on the right side with work that requires no peripheral vision on the right and work that requires no precise depth perception. To further consider the overall visual limitation I remove work with an assembly line pace to reduce stress and limit the occupation base to only jobs without ordinary hazards in the workplace defined as boxes on the floor and doors ajar. Even with these limitations the vocational expert noted that jobs remained. More limitation is not supported given the claimant's limited but intact vision on the left and little treatment covering 2023 and 2024 with no more than prescription treatment in evidence. The best corrected vision scores of record show 20/100 on the right and 20/25 on the left. Even considering right eye blindness the claimant retains significant vision with the left eye.

*Id.* at 21 (citations omitted). This court finds that the ALJ sufficiently accounted for Plaintiff's visual limitations.

Plaintiff also challenges the RFC's lack of a limitation to short and simple instructions, even though the limitation was found by two medical source opinions,[12] which the ALJ found persuasive. Pl.'s Br. at 19. However, the ALJ here did not purport to adopt all of the recommended limitations of these opinions, nor was he bound to accept all of them; an ALJ is permitted to

---

[12] This limitation was found by both state agency psychologists, Edward A. Jonas, Ph.D. and Emanuel Arthur Schnepp, Ph.D. R. at 22-23.

disregard a specific limitation even if he applies significant weight to the opinions. *See Edelheit v. Saul*, No. 19-6000, 2020 U.S. Dist. LEXIS 193544, at *7-8 (E.D. Pa. Oct. 20, 2020) (citing *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014)).  Furthermore, the ALJ concluded that such a limitation was inconsistent with medical evidence showing "generally normal mental status examinations despite some mild limitations in attention and concentration." R. at 24.

For the stated reasons, the hypothetical question posed, which contained the ALJ's RFC assessment, was not deficient as Plaintiff claims.

## V.    CONCLUSION

This court finds that the ALJ committed no error that warrants remand.  Plaintiff's Request for Review is, therefore, denied.  An implementing Order and Order of Judgment follow.